UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Meg Christy,
　　　　*Plaintiff*,

Civil No. 3:07cv1108 (JBA)

　　　　*v.*

Ken's Beverage, Inc.,
　　　　*Defendant*.

August 19, 2009

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Meg Christy alleges that her former employer, Defendant Ken's Beverage, Inc. ("KBI"), discriminated against her on the basis of her sex, tolerated a hostile work environment, and retaliated against her for complaining about such discrimination and harassment.[1] KBI denies any liability and emphasizes that Christy, after being charged with drunk driving, was no longer qualified for her job. Before the Court is KBI's motion for summary judgment as to all claims.

I.　　Background

Taking the record in the light most favorable to the Plaintiff, the facts are as follows:

A.　　Christy's DUI

KBI hired Christy as a field technician in February 2004. Christy was responsible for providing field service to customers with beverage-dispensing equipment. Because the position involved considerable road travel throughout Connecticut, Christy was required to have a "[v]alid driver's license with no driving restrictions." (Def.'s Ex. B to Mot. Summ. J. [Doc. # 38] at 2.) In May 2004, while returning home after ending a long-term relationship,

---

[1] Christy has abandoned her additional claim of disability discrimination asserted in count three of her amended complaint. (Pl.'s Opp'n [Doc. # 42] at 10.)

Christy was arrested for driving under the influence of alcohol ("DUI"). She understood that if she took a ten-week class and waited for a year, she could then apply to have the charges dropped. After her arrest, she applied for a special driver's permit with the state Department of Motor Vehicles ("DMV") so that she would be allowed to drive to and from work, the terms of which required her to get authorization from her employer. In June 2004, she met with Brian Fisher, then her supervisor at KBI, and told him about the circumstances of her arrest. Fisher signed the application, but according to Christy, he told her to "keep it between the two of" them. (Christy Dep. 71:11–20, Def.'s Ex. A.) During her deposition, Christy explained why she went through the application process for this special permit:

> Q.    In June of '04 did you understand that you needed a valid driver's license to work for [KBI]?
>
> A.    Yes.
>
> Q.    Okay.
>
> A.    Well, which it was with that permit.
>
> Q.    I understand.  My question was just whether or not this was something that was required of you in order to work for Ken's Beverage?
>
> A.    Yes.

(*Id.* at 73:1–9.)

With the special driver's permit in hand, Christy returned to work, but was subject to the terms of the permit authorizing her to drive only between 7:00 a.m. and 7:00 p.m. (*See* Def.'s Ex. D.) As she recounted in her deposition testimony, this created a problem for her on at least two occasions. In September 2004, on the Friday before Labor Day, Christy was on a call in Waterbury with Tom Cunningham, another technician, when the KBI dispatcher

asked them to drive to a customer site in Danbury.  Christy was concerned that this would keep her on the road past 7:00 p.m., and she refused to go.  When Cunningham expressed his own desire to get home, Christy confessed why she could not drive past 7:00.  But once they returned to the office, when dispatcher Steve Turell and administrator Teri Junod demanded an explanation, Christy instead claimed to have had a family obligation.  She was then written up for failing to go to the site in Danbury.

Later, while on another assignment, Christy told her co-worker Dave Sculley that she was worried about arriving home late, to which he responded by revealing that he was on probation for a domestic-violence conviction.  They talked about how other KBI employees had been involved in criminal incidents as well, although Christy later clarified in her deposition that she has no actual knowledge of whether any other employees had been arrested or convicted for DUI.  (Christy Dep. 190:2–18.)

B.      Harassment at KBI

Meanwhile, Christy received positive reviews from her supervisors at KBI.  A written evaluation earlier in 2004 praised her customer-relations skills, attention to detail, and "excellent attitude."   (Def.'s Ex. O at 2.)  On this same review form, Christy commented that, in addition to enjoying her work and hoping to gain more experience, she had experienced some inappropriate comments based on her sex:

> I'd also like my associates to receive a refresher course or two so when they're teaching me something new, I could learn the correct way.  I believe some of my associates could also benefit from some gender/diversity tolerance training.  I feel like most of the guys have been great to me, but just a handful could be better at accepting a woman joining the team.

(*Id.*)  Christy elaborated on this during her deposition.  She identified a "Bill," a "Bob," and a "Glen"—all fellow technicians, not supervisors—as having made gender-based derogatory

3

comments using foul language, including calling her a "skirt" and a "stupid bitch." Christy described one incident in particular with Bob when, during a job assignment at a Starbucks, he resisted taking direction from her and complained that "[w]omen do paperwork" and that "I don't need some chick telling me how to do it."  (Christy Dep. 131:8–132:9.)

When Christy met with Fisher and human-resources manager Mike Baumann for a performance review in the summer of 2004, she again mentioned that she was having issues with some of the male technicians.  She gave the following account of this conversation with Fisher:

> And then he got to the question about: Have you had any problems?  And I'm like, "Well, nothing, you know, too bad."  And he's like, "Well, what do you mean?"  And I said, "Well, some of the guys are not too thrilled, you know, working with me."  And he's like, "Really?  Why?"  And I'm like, "The only reason I can think of is because I'm a girl, because I'm not confrontational; you know, I'm not looking to make trouble.  So I can only assume that it's because I'm a girl."

> And he's like, 'Well, can you give me any specifics?"  And I'm like, "Well, I'd rather not, if you don't mind."  And he's like, "Well, I really need you to say something."  You know, "You can't just make up an accusation like that without backing it up."  And I said, "Well, okay, since you need specifics."  And I told him about the issue with Bob and the issue with Glen.

(*Id.* at 134:24–16.)  When pressed for more details, Christy told Fisher that she would rather not say who made the explicit comments nor what the actual comments were.  Nevertheless, Fisher admitted that "we could use a little gender acceptance training here."  (*Id.* at 136:20–21.)  Christy agreed, but noted: "It's not all the guys.  Some of these guys are straight up.  Some of these guys treat me decent but there's a few of them [that have said derogatory things]."  (*Id.* at 136:21–24.)  Although Christy also mentioned these derogatory comments to a few co-workers, she never complained to Bruce Hall, who was later named the branch

manager, or further to human-resources personnel.

The record is not perfectly clear, but Christy seems to have testified about a second conversation she had with Baumann about her concerns some time after her meeting with Fisher and Baumann.  She recalled the following exchange during her deposition:

> A.    . . . And I said, "Well, is there any news about that?  Because, you know, I like my job but some of these guys, you know, they're just not letting me do my job."  And he's like, "Yeah, I know.  We're trying to keep you away from them or keep them away from you."  And he's like, "It's not all of them."  I'm like, "No, it's not all of them."
>
> And then I said, "In general most of it I just sluff off."  You know, "I've always been a tomboy; I always hang out with the guys; and, you know, I'm used to a little bit of that.  But some of these guys are so bad that I'm not even allowed to"—and I said, "Well, you know what?  You already know.  I'm sure Steve's told you how many times I got called off of job sites."
>
> Q.    So did you not give him any specifics at that time as well?
>
> A.    At that time, correct, because he already had the information.

(*Id.* at 161:1–19.)[2]

C.     Christy's Termination

That summer, Christy injured her back, aggravating a previous injury, while out in the field.  Her workload was changed to light duty, and she eventually was shifted to working in the KBI office.  During a discussion of her employment status on December 9, 2004, Hall cited Christy for insubordination when she tried to convince him to let her keep her

---

[2] Unfortunately, the factual record before the Court is notably thin, or at least one-sided.  The brief Plaintiff's counsel submitted in opposition to summary judgment consisted of essentially two substantive paragraphs among ten pages of legal boilerplate.  And the record materials in opposition were only Plaintiff's discovery responses, which were then copied almost verbatim into Plaintiff's four-paragraph-long Local Rule 56(a)2 statement of disputed facts.

company vehicle and phone while on temporary light duty.  Hall then reviewed her file and for the first time discovered the form Fisher had signed regarding her DUI arrest.  When Hall met with Christy again the next day and asked about the arrest and her driving restrictions, she maintained that the charges had already been dropped.  Christy was then suspended pending further investigation.[3]

KBI requested a report of her driving record on December 10, 2004, which confirmed her DUI violation earlier that year.  (Def.'s Ex. H.)  On December 13, KBI's insurance agent sent the company an endorsement modifying the commercial insurance policies and excluding any vehicle driven by Christy from coverage.  (Def.'s Ex. I.)  By a letter dated December 15 and signed by Baumann, KBI terminated her employment.  In relevant part, the letter to Christy reads:

> As discussed during our telephone conference call on Friday morning 12/10/04 with Bruce Hall, Teri Junod and yourself in the Connecticut office and myself in our Illinois office[,] I stated that you were suspended pending review of your driving record. Upon completion of my investigation, I have been able to confirm that you were convicted of a DUI on 5/28/04.  Your driver's license was suspended.
>
> It is our compan[y's] policy that any employee that operates any company owned vehicle must have and maintain a driving record that is acceptable to our insurance compan[y's] underwriting standards.  If an employee's driving record were to become unacceptable for maintaining insurance coverage, they would not longer be able to be employed.  Your driving record has changed and currently does not meet the acceptable standard of our insurance carrier.

_____

[3] This meeting on December 10, 2004 was documented by Hall in an e-mail to Fisher and Baumann.  (Def.'s Ex. E.)  Plaintiff objects to this letter on hearsay grounds, and refuses to admit or deny the facts contained within it.  (Pl.'s Rule 56(a)2 Stmt. [Doc. # 42-2] at 2.) In Hall's affidavit (Def.'s Ex. L), however, he confirms the events described in the letter, and Plaintiff has produced no evidence to dispute Hall's averments.

(Def.'s Ex. J.)

## II.    Discussion

On this factual record, Plaintiff asserts claims of sex discrimination, hostile work environment, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et seq.*  Because Connecticut courts "look to federal law for guidance on interpreting state employment discrimination law, . . . the analysis is the same under both."  *Craine v. Trinity College*, 791 A.2d 518, 531 n.6 (Conn. 2002).  Under the familiar Rule 56 standard, summary judgment in favor of the Defendant is appropriate if the current record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

### A.    Sex Discrimination

In count one of her amended complaint, Christy claims that KBI discriminated against her on the basis of her sex.  To establish a *prima facie* case of sex discrimination, she must prove: (1) membership in a protected class; (2) qualification for her position; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of her membership in the protected class.  *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).  The first and third elements are not disputed: Christy is a woman, and she was terminated.  KBI contends, however, that Christy cannot meet her *prima facie* burden because her driving limitations traceable to the DUI arrest made her no longer qualified for her position as a field service technician.  KBI further argues that the DUI charges provide a legitimate, non-discriminatory reason for Christy's termination, and

that there is no evidence from which a jury could conclude that this justification was a pretext for sex discrimination.

Christy's *prima facie* showing is deficient in two respects.  First, her DUI arrest and subsequent driving limitations made her no longer qualified for her job at KBI.  Because the stated qualifications for Christy's technician job were specific and objective, it is her burden to allege and prove that she met those criteria at the time of her termination, *see, e.g., Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565–66 (2d Cir. 2000) (affirming the dismissal of plaintiff's failure-to-promote claim in part because "nothing in the complaint supports the inference that [she] was qualified" for the position); *Mendelsohn v. Univ. Hospital*, 178 F. Supp. 2d 323, 328 (E.D.N.Y. 2002) ("Although the plaintiff's burden of alleging that he is qualified for the position is a minimal one, it is still a burden.") (collecting cases; quotation marks omitted) or that the qualifications were not evenly applied or actually in force, *see, e.g., Turner v. Honeywell Fed. Mfg. & Tech., LLC*, 336 F.3d 716, 721 (8th Cir. 2003) (noting that a plaintiff's *prima facie* burden is lighter when the hiring criteria are not uniformly applied); *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1006 n.8 (10th Cir. 1996) ("Of course, if a plaintiff can show that the employer has imposed an objective employment criteria *for the purpose of* excluding a protected class, then such a plaintiff will have presented direct proof of discrimination and the burden shifting mechanism of *McDonnell Douglas* will not be needed."); *Gates v. BEA Assocs., Inc.*, No. 88-6522, 1990 WL 180137, at *1 (S.D.N.Y. Nov. 13, 1990) (finding that the plaintiff met her *prima facie* burden based on her contention that the "requirement of a college degree was not a bona fide qualification for the positions at issue and was added solely to exclude her from consideration").

In the description for her position as a field service technician, the brief list of qualifications required by KBI includes having a valid driver's license without restrictions. (Def.'s Ex. B.)  There is no dispute that Christy did not meet that criterion as a consequence of her DUI arrest.   At oral argument, Plaintiff suggested that her being technically unqualified was a minor noncompliance—a "nit-picky" reason to fire her—and that this issue was not material because it did not affect her ability to do her job.  However, Christy's own deposition testimony contradicts her counsel's argument: in September 2004, she refused to go to a customer site in Danbury for fear of returning home late and in violation of the terms of her driving permit.  Moreover, Christy testified that she obtained the special driver's permit because she understood that having a valid license was a job requirement. On her DMV application, Christy wrote that she needed the permit because she otherwise "would be unable to perform [her] regular duties as a trained technician."  (Def.'s Ex. D.) The undisputed facts further show that the license requirement was in place in part so that KBI could obtain sufficient insurance coverage for its employee drivers.  Thus, once Christy's driving privileges became restricted following her DUI arrest, she was no longer qualified for her job at KBI.

The second flaw in Christy's *prima facie* case is that she has offered no evidence suggesting that she was terminated on account of her sex.  Her deposition testimony includes vague references to other KBI employees with criminal records or DUI arrests, but she conceded that she had no direct or second-hand knowledge of these unnamed employees and their circumstances.  Consequently, a reasonable fact-finder could draw no inference from KBI's treatment of other similarly situated employees in support of her claim of discrimination.  Similarly, even assuming for the sake of argument that Christy has met her

*prima facie* burden—and given that the *McDonnell Douglas* steps can "tend to collapse as a practical matter," *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 n.1 (2d Cir. 2002)—she has offered nothing to refute KBI's stated reason for her termination.  KBI contends that Christy was terminated because of her restricted driving privileges, and there is no evidence in the record from which a reasonable jury could conclude that this justification was pretextual.  Hall has averred that he did not know about Christy's DUI arrest before reviewing her file in December 2004 and, after consultation with Baumann, then terminated her on that basis.  Christy does not dispute these facts.

For these reasons, because no jury could conclude from these facts that Christy's termination was the product of unlawful sex discrimination, summary judgment must be granted on this claim.

> B.      Hostile Work Environment

Christy's second claim is that she was forced to work in a hostile work environment while employed at KBI.  To prevail on this claim, Christy must prove  "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (quotation marks and citations omitted).  Where alleged harassment is "attributable to a co-worker, not a supervisor," a plaintiff must show that her employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it."  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996).  In this context, "an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known)

10

about the harassment but failed to take appropriate remedial action." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 (2d Cir. 2004).  It remains the plaintiff's responsibility to offer an evidentiary basis for holding the employer liable for co-worker harassment: "Once a plaintiff has established the existence of a hostile workplace, she must then demonstrate that the harassing conduct which created the hostile situation should be imputed to the employer." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 64 (2d Cir. 1998) (quotation marks omitted).

Assuming for the sake of argument that a jury could find the harassment Christy describes to be sufficiently suggestive of severe and pervasive conduct, she must still establish a factual basis on which to impute this conduct to KBI.  On this point the record reveals only that Christy's supervisors recognized that some male employees could benefit from sensitivity training and that Baumann was working on responding to her complaints about the male technicians by "trying to keep [her] away from them or keep them away from [her]."  (Christy Dep. 161:4–5.)  Christy has offered no evidence that KBI's response was inadequate or unreasonable such that there were further incidents of harassment after her meeting with Fisher and Baumann in the summer of 2004.  Lacking evidence of inadequacy or unreasonableness, Christy has not provided a factual basis on which jurors could impute the harassment to KBI.

It is often difficult to assess the sufficiency of facts underlying a hostile-work-environment claim on summary judgment.  *See, e.g., Schiano v. Quality Control Sys., Inc.*, 445 F.3d 597, 605–08 (2d Cir. 2006) (cautioning against disposing of such claims before trial).  But the question of whether there is a "specific basis" in the record on which to hold an employer liable for employee harassment does not entail the same fact-intensive analysis.  A jury in this case would have no evidence from which to conclude that the company failed

to act to remedy the harassment that Christy reported to her supervisors or that their response was lame and ineffective. Although an employer's liability may be predicated on a failure to investigate complaints of sexual harassment to assess the scope and culprits to which remedial action could be tailored, the insufficiently developed factual record here is such that no reasonable jury could find that any harassing conduct by Christy's co-workers can be imputed to KBI, and her hostile-work-environment claim in count two cannot survive for trial.

C.    Retaliation

Christy's remaining claim is that KBI retaliated against her by terminating her for complaining about sex discrimination and harassment. A plaintiff alleging retaliation must initially establish a *prima facie* case by showing that she was engaged in a protected activity, that her employer was aware of this activity, that she was subject to an adverse employment action, and that there was a causal connection between her protected activity and the adverse action. *Collins*, 305 F.3d at 118. To demonstrate that she engaged in a protected activity, Plaintiff must show that she "had a good faith, reasonable belief that the underlying employment practice was unlawful." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (quotation marks omitted). The causation element can then be proven "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). The familiar *McDonnell Douglas* burden-shifting analysis applies to Title VII retaliation claims as well. *Terry v. Ashcroft*, 336 F.3d 128, 141

12

(2d Cir. 2003); *Reed*, 95 F.3d at 1178.

Christy asserts that she engaged in protected activity by complaining to Fisher and Baumann about the harassment by co-workers. Neither Fisher nor Baumann fired her, however. Hall did, following which Baumann sent Christy the termination letter. Hall specifically averred in his affidavit that he had no knowledge of any complaints Christy made about sexual harassment before terminating her:

> 8.    At no time prior to December 2004, was I aware that Meg Christy had been charged with driving under the influence.
>
> 9.    At no time on or before December 15, 2004, was I aware that Meg Christy complained that she was being sexually harassed or that she otherwise complained about the terms and conditions of her employment.
>
> 10.    I terminated Meg Christy based on the information known to me about her DUI and based on information provided to me by Michael Baumann.

(Hall Aff. ¶¶ 8–10.) There is no evidence in the record tending to contradict Hall's averments that he terminated Christy solely because of the consequences of her DUI. Critically, in her Local Rule 56(a)2 Statement, Plaintiff concedes that Hall had no such knowledge. Thus, whether or not Christy's somewhat vague complaint to Fisher and Baumann about the derogatory comments constituted protected activity, she still has failed to make out a *prima facie* case of retaliation. Moreover, based on the facts established in Hall's uncontested affidavit, no reasonable jury could find that Christy's harassment complaints, rather than her DUI arrest, were the causal trigger for Hall's decision to fire her. For these reasons, summary judgment must be granted on the retaliation claim in count four.

III.     Conclusion

        Accordingly, Defendant's Motion for Summary Judgment [Doc. # 38] is granted.

The Clerk is directed to close this case.

                                        IT IS SO ORDERED.


                                        _____/s/_____
                                        Janet Bond Arterton, U.S.D.J.


                        Dated at New Haven, Connecticut this 19th day of August, 2009.


                                        14